IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PRATIBHA NIGAM, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 3:17-cv-329 |
| | : | JUDGE WALTER H. RICE |
| WRIGHT STATE UNIV., *et al.*, | : | |
| Defendants. | : | |

DECISION AND ENTRY SUSTAINING DEFENDANTS WRIGHT STATE UNIVERSITY AND VICKI EVANS'S MOTION TO DISMISS PLAINTIFF PRATIBHA NIGAM'S AMENDED COMPLAINT (DOC. #12); CLAIMS ONE AND TWO IN PLAINTIFF'S AMENDED COMPLAINT (DOC. #10) ARE DISMISSED WITH PREJUDICE; CLAIMS THREE AND FOUR ARE DISMISSED WITH PREJUDICE AS THEY PERTAIN TO DISABILITY DISCRIMINATION; CLAIMS THREE AND FOUR ARE DISMISSED WITHOUT PREJUDICE TO REFILING, SUBJECT TO THE STRICTURES OF RULE 11, AS THEY PERTAIN TO RETALIATION UNDER THE AMERICANS WITH DISABILITIES AND REHABILITATION ACTS; CLAIMS FIVE THROUGH SEVEN ARE DISMISSED WITHOUT PREJUDICE, SUBJECT TO REFILING IN A COURT OF COMPETENT JURISDICTION; JUDGMENT SHALL ULTIMATELY ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF ON CLAIMS ONE AND TWO IN THEIR ENTIRETIES, AND ON CLAIMS THREE AND FOUR AS THEY PERTAIN TO DISABILITY DISCRIMINATION

Plaintiff Pratibha Nigam ("Plaintiff") was a student in the Bachelor's of Science in Nursing program ("Program") in Defendant Wright State University's ("WSU") College of Nursing and Health ("CoNH") from Fall 2011 until Fall 2015, when she was dismissed from the Program. During her entire tenure at WSU, Plaintiff was under a disability, and she claims that she suffered discrimination on the basis of that disability by Defendant

Vicki Evans ("Evans"), one of Plaintiff's clinical professors in the CoNH, and suffered retaliation by Evans as a result of her reporting that discrimination, culminating in her dismissal from the Program. WSU and Evans (collectively "Defendants") have filed a Motion to Dismiss Plaintiff's Amended Complaint ("Motion"), arguing that "this Court lacks subject matter jurisdiction over some of Plaintiff's claims, and the claims over which this Court has jurisdiction fail to state a claim upon which relief can be granted." Doc. #12, PAGEID #86. For the reasons set forth below, Defendants' Motion is SUSTAINED.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

Plaintiff enrolled at WSU in Fall 2010 and matriculated into the Program in Fall 2011. Doc. #10, ¶¶ 14-15, PAGEID #66. In December 2012, Plaintiff was diagnosed with ovarian cancer and withdrew from the Program while she underwent treatment. *Id.*, ¶¶ 16-17. Plaintiff was readmitted to the Program in 2014, and enrolled in Nursing 4420, a clinical course taught by Evans, in Summer 2014. *Id.*, ¶ 18. During the course, Evans, who knew of Plaintiff's past cancer treatments, *id.*, ¶ 20, PAGEID #67, "harassed Plaintiff throughout the semester by regularly singling her out from the other students based on actual and perceived weaknesses due to Plaintiff's disabilities." *Id.*, ¶ 21. "On June 25, 2014, Plaintiff suffered a panic attack during a clinical shift immediately after Defendant Evans admonished Plaintiff in her clinical." *Id.*, ¶ 22. Plaintiff withdrew from Nursing 4420 and petitioned CoNH for an extension of time to complete the Program;

---

[1] As Defendants' Motion to Dismiss is brought under Rule 12(b)(6), the Court, for the purposes of the motion, must treat Plaintiff's well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

2

on appeal, she was granted such an extension. *Id.*, ¶¶ 24-25. During the petition and appeals process, Plaintiff reported to CoNH that Evans had verbally abused her in public, and she submitted anonymous written statements from other students corroborating her description of harassment. *Id.*, ¶ 26, PAGEID #67-68. Evans became aware of Plaintiff's reports, and in an interview with Lindsay Wright ("Wright"), an investigator with WSU's Office of Equity and Inclusion ("OEI"), "Evans alleged that Plaintiff 'campaigned' against her 'by claiming her rights were violated.' This was 'very frustrating' to Ms. Evans." *Id.*, PAGEID #68.

Upon receiving an extension of time, Plaintiff re-enrolled in Nursing 4420 in Summer 2015, with a different instructor, and "excelled in both the lecture and clinical portions of the course[.]" Doc. #10, ¶ 27, PAGEID #68. In Fall 2015, Plaintiff enrolled in Nursing 4460, "and was placed at the Grandview Medical Center ('GMC') in Dayton, Ohio[,] for her clinical rotation. Liz Pulley [('Pulley')] was assigned as Plaintiff's Clinical Instructor[,] and Jessica Roberts [('Roberts')] was assigned as Plaintiff's Preceptor[2] at GMC." *Id.*, ¶ 28. In an evaluation dated October 17, 2015, Roberts indicated "that Plaintiff's performance was satisfactory in all ten areas of evaluation." *Id.*, ¶ 31, PAGEID #69. However, on October 16, 2015, Plaintiff informed Evans that she was working full-time outside of her clinical rotations for Nursing 4460. *Id.*, ¶ 30. Evans then contacted Pulley to voice her concerns about Plaintiff working while performing clinical rotations. *Id.*, ¶¶ 32-33. In an October 19, 2015, meeting, Pulley informed Plaintiff of Evans's concerns, *id.*, ¶ 34, PAGEID #70, and the next day, "Roberts relayed

---

[2] A preceptor is a practicing nurse who also helps and evaluates nursing students during their clinical rotations.

3

apparently newfound concerns about Plaintiff's competency, knowledge of medications and overall safety." *Id.*, ¶ 36.

On October 22, 2015, Roberts issued a new evaluation, Doc. #10, ¶ 37, PAGEID #70, rating Plaintiff "as satisfactory in only four out of ten areas." *Id.*, ¶ 38. The next day, "Pulley informed Plaintiff that she could not return to the clinical [rotation at GMC] until the 'narcotics issue'" pertaining to her "was investigated." *Id.*, ¶ 41, PAGEID #71. Pulley completed her own midterm evaluation of Plaintiff, assigning her "the lowest possible scores in each category." *Id.*, ¶ 42. Plaintiff was never provided a remedial action plan or offered a different clinical placement, and on November 10, 2015, Plaintiff was dismissed from the Program. *Id.*, ¶¶ 44-47, PAGEID #72.

On January 6, 2016, Plaintiff sent a letter to Matthew Boaz ("Boaz"), the OEI Director, in which she alleged "ridicule, harassment, discrimination and retaliation based on the foregoing circumstances." Doc. #10, ¶ 52, PAGEID #73. Wright, on behalf of OEI, conducted interviews of: Evans; Pulley; Roberts, Will Matcham, Ph.D., Course Coordinator, and Sherrill Smith, Ph.D., Assistant Dean of Undergraduate Programs. *Id.*, ¶ 53. From her investigation, Wright concluded that it was more likely than not that WSU's Non-Discrimination Statement had been violated with respect to Plaintiff, and she informed Thomas Sudkamp, Ph.D., Provost of CoNH, of same. *Id.*, ¶ 55, PAGEID #74. Nonetheless, on July 18, 2016, Dr. Sudkamp determined that Plaintiff had not suffered discrimination or retaliation, and would not be permitted to re-enter the Program. *Id.*, ¶ 56. As Plaintiff was not permitted to appeal Dr. Sudkamp's decision, *id.*, ¶ 58, she alleges that she was "dismissed from the CoNH without being afforded . . . reasonable procedural process, for reasons that were purely pretextual." *Id.*, ¶ 60.

4

On December 1, 2017, Plaintiff filed an Amended Complaint against WSU and Evans, raising a First Amendment Retaliation Claim, brought under 42 U.S.C. § 1983, against Evans in her Official and Individual Capacities (Claim II). Doc. #10, ¶¶ 76-83, PAGEID #77-78.[3] Plaintiff also claims that WSU engaged in disability-based discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.* (Claim III) and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Claim IV). *Id.*, ¶¶ 84-99, PAGEID #78-79. Plaintiff also brings three state common law claims: breach of contract against WSU (Claim V); intentional infliction of emotional distress ("IIED") against Evans in her individual and official capacities (Claim VI); and tortious interference with contract against Evans in her individual capacity (Claim VII). *Id.*, ¶¶ 100-25, PAGEID #80-83. Plaintiff seeks declaratory and prospective injunctive relief, as well as money damages. *Id.*, PAGEID #83.

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

"The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation[.]" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (citing FED. R. CIV. P. 12(b)(1)). "[T]he party invoking federal jurisdiction has the burden to prove that [subject matter] jurisdiction [exists]." *Global Tech., Inc. v. Yubei (XinXiang) Power*

---

[3] Plaintiff also brought, under 42 U.S.C. § 1983, a Procedural Due Process claim against WSU (Claim I). Doc. #10, ¶¶ 65-75, PAGEID #75-76. However, in her memorandum *contra*, Plaintiff abandons that claim, conceding that such a claim is barred by the Eleventh Amendment to the United States Constitution. Doc. #13, PAGEID #107-08.

*Steering Sys. Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015). As parties cannot waive the requirement of subject matter jurisdiction," *Ammex, Inc. v. Cox*, 351 F.3d 697, 702 (6th Cir. 2003) (quoting *Riggs v. Island Creek Coal Co.*, 542 F.2d 339, 343 (6th Cir. 1976)), the Court must dismiss any claims over which it lacks jurisdiction.

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Rule 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party "has the burden of showing that the opposing party has failed to adequately state a claim for relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a Rule 12(b)(6) motion to dismiss "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a Rule 12(b)(6) motion, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its [well-pleaded] allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh*, 487 F.3d at 476).

6

Nevertheless, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id*. Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Legal conclusions "must be supported by well-pleaded factual allegations . . . [that] plausibly give rise to an entitlement of relief." *Id*. at 679. "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

### C. Leave to Amend Standard

While Rule 15(a)(2) directs this Court to give leave to amend freely "when justice so requires[,]" it need not grant leave to amend if doing so would be futile. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citation omitted)

## III. ANALYSIS

### A. Plaintiff Lacks a Plausible First Amendment Retaliation (Claim II) against Evans

#### 1. Evans Cannot be held liable in her official capacity

Plaintiff's claim against Evans in her official capacity is "in all respects other than name, to be treated as a suit against the entity[,]" WSU. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). "[I]n the absence of consent[,]" or narrow exceptions provided for by the Constitution or statute, "a suit in which the State or one of its or departments is named as the defendant is proscribed by the Eleventh Amendment" to the United States Constitution *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Moreover, Section 1983 claims for money damages may only be brought against a "person," and "neither a State nor its officials acting in their official capacities are persons under [section] 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 60, 71 109 S.Ct. 2304,105 L.Ed.2d 45 (1989). Thus, Plaintiff's prayer for money damages as to Claim Two, Doc. #10, PAGEID #83, is not viable as to her official capacity claim against Evans.

Plaintiff argues that, because she is seeking prospective injunctive relief—specifically, reinstatement into the Program, and removal of any negative evaluations or notations in her student record—her claim qualifies as an exception to the Eleventh Amendment bar against official capacity suits. Doc. #13, PAGEID #108 (citing *Ex Parte Young* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). As the U.S. Court of Appeals for the Sixth Circuit has held that both reinstatement to a school and the removal of entries in a student record meet the *Ex Parte Young* exception, Plaintiff's official capacity claim against Evans is not barred by the Eleventh Amendment. *Carten v. Kent*

8

*State Univ.*, 282 F.3d 391, 395-96 (6th Cir. 2002); *Thomson v. Harmony*, 65 F.3d 1314, 1321 (6th Cir. 1995). Thus, the motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is overruled.

However, for a claim of First Amendment retaliation to survive a motion to dismiss under Rule 12(b)(6), a claimant must plausibly allege that: (1) she engaged in protected conduct; (2) the defendants undertook some adverse action that would deter a reasonable person from engaging or continuing to engage in such protected conduct; and (3) a causal connection exists between the protected conduct and the adverse action. *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 412 (6th Cir. 2011) (internal quotation marks and citation omitted). "[D]efendants acknowledge that Plaintiff's purported report could be considered protected activity." Doc. #14, PAGEID #129. Moreover, Plaintiff's dismissal from the Program qualifies as an adverse action; "[a] serious obstacle to the completion of an educational program is the kind of 'injury that would likely chill a person of ordinary firmness from continuing to engage in [protected] activity.'" *Benison v. Ross*, 765 F.3d 649, 659-60 (6th Cir. 2014) (quoting *Paige v. Coyner*, 614 F.3d 273, 281 (6th Cir. 2010)).

However, for several reasons, Plaintiff has failed to allege a plausible causal connection between her report of Evans's discrimination, in August 2014, and her dismissal from the Program, in November 2015. First, while the fifteen month gap between her protected activity and adverse action does not, by itself, render a causal connection implausible, it does provide ample opportunity for the causal connection to be severed. Second, Plaintiff reported Evans's discrimination only after CoNH denied her petition for an extension of time to complete the Program; upon receiving Plaintiff's

9

reports, the CoNH reversed itself and granted her an extension of time to complete the Program. Doc. #10, ¶¶ 25-27, PAGEID #67-68. CoNH's favorable action toward Plaintiff would seem to sever any causal connection between the protected activity and her dismissal from the Program. *See Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997) (setting aside jury verdict in favor of employee because, "[d]uring the eighteen month period between [plaintiff's] protected statements and the [defendants'] alleged retaliation, [defendants] gave Brady positive evaluations and twice recommended that she be promoted. This fact is utterly inconsistent with an inference of retaliation[.]") (emphasis added). Here, the granting of Plaintiff's request for an extension broke any alleged or inferred causal connection; it is facially implausible to claim that, while Plaintiff's protected speech resulted in WSU taking a favorable action toward her, that same protected speech resulted in an unfavorable action more than one year later. As Plaintiff alleges no facts that would render a causal connection any more plausible, her official capacity claim against Evans must be dismissed.

2. **Evans Cannot be Held Liable for Claim Two in her Individual Capacity, as she did not Undertake the Alleged Adverse Action Against Plaintiff**

Plaintiff alleges that Evans raising concerns to Pulley about Plaintiff's work schedule—which she only did in retaliation for Plaintiff reporting Evans's discriminatory treatment of her—led to the adverse action, her dismissal from the Program. Thus, Plaintiff claims, her individual capacity claim against Evans is viable. Doc. #13, PAGIED #118-19 (citing Doc. #10, ¶¶ 21, 26, 32, 37, 54-55, PAGEID 67-68, 69, 70, 73-74. However, Plaintiff does not allege that Evans effected or was personally involved with the decision to dismiss her from the Program, or with Dr. Sudkamp's rejection of

10

the OEI finding of discrimination. Moreover, it is not reasonable, <u>without additional facts</u>, to infer that a professor would have the authority to make such a decision.

Finally, any attempt to advance a claim against Evans under a "cat's paw" theory is unavailing. "Under the cat's paw theory, 'if a supervisor performs an act motivated by [discriminatory] animus that is <u>intended</u> by the supervisor to cause an adverse . . . action, and if that act is a proximate cause of the ultimate . . . action, then the [decision-maker] is liable.'" *Peirano v. Momentive Specialty Chem., Inc.*, No. 2:11-cv-281, 2012 WL 4959429, at * 14 (S.D. Ohio Oct. 17, 2012) (Sargus, J.) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 422, 131 S.Ct. 1186, 179 L.Ed.2d 144 (2011)) (brackets and emphasis in original). The viability of a cat's paw theory of liability for claims is an open question within the Sixth Circuit. *See Henderson v. Chrysler Grp., LLC*, No. 14-2032, No. 14-2032, 610 F. App'x 488, 497 (6th Cir. 2015) (noting that the Sixth Circuit has "not yet extended the cat's paw theory of liability to claims under the ADA."); *but see Welsh v. Auto. Data Processing, Inc.*, 954 F. Supp. 2d 670, 681-82 (S.D. Ohio 2013) (Dlott, C.J.); *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1036 n.5 (N.D. Ohio 2012); *Peirano*, 2012 WL 4959429, at *14 (assuming that ADA discrimination or retaliation claim could proceed on cat's paw theory).

However, even assuming that Plaintiff may legally proceed under cat's paw theory for ADA and Rehabilitation Act claims, such a claim is not viable against Evans. While Evans allegedly spoke with Pulley about Plaintiff's issues, Doc. #10, ¶¶ 32-33, PAGEID #69, Plaintiff does not claim that Roberts was aware of Evans's conversation with Pulley. This distinction is significant because it was <u>Roberts</u>, and not Evans, who withdrew as Plaintiff's preceptor at the hospital, and submitted a modified Midterm

11

Progress Report; it was that modified report upon which Pulley based "her own Midterm Evaluation of Plaintiff. . . which assigned Plaintiff with the lowest possible scores in each rated category." *Id.*, ¶ 42, PAGEID #71. Also, Plaintiff does not allege that Pulley was involved with the decision to dismiss Plaintiff from the Program, and she claims Drs. Matcham and Smith told her that she was dismissed due to an issue relating to her administration of narcotics. *Id.*, ¶¶ 47-48, PAGEID #72. Yet, Plaintiff alleges only that Evans contacted Pulley "about Plaintiff's work schedule, among other unknown issues." *Id.*, ¶ 33, PAGEID #69. Plaintiff does not claim that Evans was even aware of a narcotics issue, much less that she spoke with Pulley about it. In sum, the facts do not permit the reasonable inference that any allegedly illegal act by Evans was the <u>proximate</u> cause of any adverse action that is the subject of her Amended Complaint.

In light of the above, Plaintiff's failure to allege personal involvement by Evans in the adverse action taken is fatal to the individual capacity claim, even at the motion to dismiss stage, and Claim II must be dismissed in its entirety under Rule 12(b)(6).[4]

### B.  Plaintiff's Claims III (ADA) and IV (Rehabilitation Act) Claims Fail as Matters of Law

#### 1.  Discrimination

Plaintiff alleges that Defendants engaged in disability-based discrimination of her in violation of both the ADA and Rehabilitation Act. Doc. #10, ¶¶ 84-99, PAGEID #78-79.

> To establish her claim that she was dismissed because of her ADHD in violation of the Rehabilitation Act [or] the ADA, . . . [P]laintiff must show

---

[4] As Plaintiff's First Amendment rights were not violated by Evans, the Court need not consider whether she would be entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 505 (2009).

12

> that (1) she is handicapped or disabled as defined in each statute, (2) she is otherwise qualified to continue in the program, and (3) she was dismissed from the program on the basis of her handicap or disability.

*Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998) (internal quotation marks and citation omitted). Defendants argue that, for two reasons, Plaintiff has failed to set forth a plausible claim of disability discrimination. <u>First</u>, "Plaintiff fails to allege that her disability, as opposed to her disability discrimination complaint, had anything to do with her dismissal. Thus, Plaintiff fails to state a discrimination claim under Title II of the ADA upon which relief can be granted." Doc. #14, PAGEID #136. <u>Second</u>, "Plaintiff never identifies which university official(s) made the dismissal decision or whether those officials had knowledge of Plaintiff's purported protected activity. This omission is fatal." *Id.*, PAGEID #137 (citing Doc. #13, PAGEID #117-18, 120-21; *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002)).

While Plaintiff alleges that she is disabled under both the ADA and Rehabilitation Act, Doc. #10, ¶¶ 87, 90, 97, PAGEID #78, 79, the only allegations in her Amended Complaint that pertain to actual discrimination, as opposed to retaliation, were Evans's treatment of her, and Plaintiff's reports of same to CoNH, both of which occurred in the Summer of 2014. Doc. #10, ¶¶ 20-26, PAGEID #67-68. Further, upon becoming aware of Evans's allegedly discriminatory conduct, CoNH granted her an extension of time to complete Program requirements, ensuring that she would remain in good standing in the program. *Id.*, ¶ 27, PAGEID #68. Moreover, Plaintiff's failure to identify the individuals responsible for her dismissal makes it impossible for the Court to infer that the decision-makers were even aware of Plaintiff's disability, much less that they dismissed her from the Program because of said disability.

13

Finally, Plaintiff claims that the adverse action element is satisfied because the "Provost unilaterally reversed the finding of discrimination by his own Office of Equity and Inclusion." Doc. #13, PAGIEID #119-20. However, there is no indication from the Amended Complaint that Provost Sudkamp made his decision to reject OEI's findings on the basis of Plaintiff's disability. See Doc. #10, ¶ 57, PAGEID #74 ("No explanation was given by WSU for the determination made by Provost Sudkamp."). Accordingly, Plaintiff's disability discrimination claim under both the ADA and Rehabilitation Act must be dismissed under Rule 12(b)(6).[5]

### 2.    Retaliation

> Both the ADA and Section 504 prohibit retaliation against any individual because of his or her opposing practices made unlawful by the Acts or otherwise seeking to enforce rights under the Acts. The Acts have a similar scope and aim; for purposes of retaliation analysis, cases construing either Act are generally applicable to both.

*A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687, 696-97 (citations omitted). To survive a motion to dismiss, Plaintiff must plausibly allege that: (1) she engaged in protected activity; (2) Defendants knew of that activity; (3) Defendants took a materially adverse action against Plaintiff; and (4) a causal connection exists between the protected activity and adverse action. *Id.* at 697 (citing *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir.2000). However, "[t]o be adverse, a retaliatory action must be enough to

---

[5] As Plaintiff has failed to set forth a plausible claim under either the ADA or Rehabilitation Act, the Court need not evaluate Defendants' argument that Plaintiff's ADA claim is barred by the Eleventh Amendment. Doc. #14, PAGEID #133-134 citing *U.S. v. Georgia*, 546 U.S. 151, 159, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006); *Tennessee v. Lane*, 541 U.S. 509, 533, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004); *City of Boerne*, 521 U.S. 507, 520-21, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)).

dissuade a reasonable person from engaging in the protected activity; 'petty slights or minor annoyances' cannot qualify." *A.C.*, 711 F.3d at 697 (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)).

Plaintiff alleges that, "[a]s a direct result of Plaintiff's complaints to the CoNH about Defendant Evans'[s] harassing and discriminatory treatment, and Defendant Evans'[s] knowledge of those complaints, Plaintiff was retaliated against by Defendant Evans and Provost Sudkamp[.]" Doc. #10, ¶ 60, PAGEID #74. As discussed above, Plaintiff's reports to CoNH about Evans's discrimination constituted protected activity, and Plaintiff alleges that Evans was aware of the Complaints. *Id.*, ¶ 26, PAGEID #67-68. However, as discussed above, Evans reporting to Pulley her concerns regarding Plaintiff's outside work during the clinical rotation, *id.*, ¶¶ 32-33, PAGEID #69, was not causally connected with any materially adverse action that was subsequently taken against her. Moreover, Plaintiff does not allege that Evans was involved with the decisions to dismiss her from the Program or reject the OEI findings. Thus, the Amended Complaint does not allege that Evans undertook any <u>materially</u> adverse action against Plaintiff; Evans's action was, at most, a "minor annoyance" that cannot satisfy the adverse action element. *White*, 548 U.S. at 68.

As to Sudkamp, the Court may plausibly infer that his decision, on July 18, 2016, to reject the OEI findings, and refusal to provide Plaintiff with any avenue to appeal his decision, Doc. #10, ¶¶ 56, 59, PAGEID #74, were materially adverse actions. However, Plaintiff has failed to allege a plausible causal connection between her protected activity and those actions. Importantly, Plaintiff does not claim that her complaint to OEI was a protected activity. Rather, the only protected activity she

15

alleges was her 2014 complaint about Evans's alleged disability discrimination. Sudkamp's rejection of the OEI findings occurred almost two years after Plaintiff undertook that protected activity. Further, as discussed above, the decision to grant Plaintiff an extension of time came after Plaintiff reported Evans's discrimination, and seemingly severed the causal chain between Plaintiff's protected activity and the later adverse actions. Plaintiff does not allege that Sudkamp was motivated by those reports in deciding to reject the OEI findings. The lack of causal connection is fatal to Plaintiff's retaliation claims under both the ADA and Rehabilitation Act, and thus, Claims III and IV must be dismissed in their entireties under Rule 12(b)(6).[6]

### C. Dismissal with Prejudice of Federal Law Claims except for Retaliation Components of Claims III and IV

Plaintiff filed her original Complaint on September 21, 2017, Doc. #1, which Defendants moved to dismiss under Rules 12(b)(1), (3) and (6) on November 14, 2017. Doc. #6. Rather than respond to Defendants' original motion, Plaintiff filed her Amended Complaint—her second chance to set forth plausible claims for relief—on December 1, 2017. Doc. #10. Her inability to do so—and, as discussed above, the extent to which her claims fall short of satisfying *Iqbal* and *Twombly*—lead the Court to conclude that further leave to amend is futile as to Claims One and Two, and the disability discrimination components of Claims Three and Four. Accordingly, those claims are dismissed with prejudice. *Riverview Health*, 601 F.3d at 512 (6th Cir. 2010). However, if Plaintiff's filing of the OEI complaint was a protected activity, there is a

---

[6] As with the discrimination claims, Plaintiff's failure to allege plausible claims of retaliation means the Court need not consider Defendants' argument that Plaintiff's ADA retaliation claim against WSU is barred by the Eleventh Amendment. Doc. #12, PAGEID #98 (citing *Bd. of Trustees, Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001)).

possibility that she could set forth a plausible retaliation claim under the ADA and Rehabilitation Act. Given its strong preference for resolving claims on their merits, the Court will grant Plaintiff <u>one final opportunity</u> to do so. Thus, Claims Three and Four, as to retaliation, are dismissed without prejudice.

### D. Court Lacks Jurisdiction over Plaintiff's State Law Claims

Plaintiff argues that, even if her federal law claims (I through IV) are dismissed, the Court should still exercise its supplemental jurisdiction and hear the merits of her state law claims (V through VII). Doc. #13, PAGEID #124-25 (citing 28 U.S.C. § 1367(b); *Venegas v. Wright State Univ.*, No. 3:16-cv-377, 2017 WL 3605438, at *15 (S.D. Ohio Aug. 21, 2017) (Rice, J.)). In *Venegas*, this Court acknowledged its supplemental jurisdiction over Plaintiff's state law claim, but decided that "this lawsuit is not one of the rare cases where 'the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues,'" 2017 WL 3605438, at *15 (quoting *Moon v. Harrison Piping Supply,* 465 F.3d 719, 728 (6th Cir. 2006)), and dismissed the state law claim without prejudice.

However, the issue of immunity as to state law claims was not before the Court in *Venegas*. Moreover, as Defendants note, the Ohio Court of Claims is the only venue in which an arm of the State of Ohio, such as WSU or Evans in her official capacity, may be sued for state law claims without implicating sovereign immunity. Doc. #12, PAGEID #102-03 (citing Ohio Const. art. 1, § 16; Ohio Rev. Code § 2743.02(A)(1)); *see also Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999) (Ohio's limited consent to be sued in the Ohio Court of Claims does not constitute a waiver of immunity from suit in federal court). As to Plaintiff's individual capacity claims against Evans, Ohio law

17

"confers on employees of the State of Ohio immunity from liability in civil actions arising under Ohio law[,]" and "confers exclusive jurisdiction upon the Ohio Court of Claims to make the threshold determination of whether an employee-defendant retains or forfeits that immunity in a particular case." *Id.*, PAGEID #104 (citing Ohio Rev. Code §§ 9.86, 2743.02(F); *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 458 (6th Cir. 1998)). Thus, Plaintiff's state law claims must be dismissed without prejudice to refiling in the Ohio Court of Claims.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, Doc. #12, is SUSTAINED. Claims One and Two and the discrimination components of Claims Three and Four in Plaintiff's Amended Complaint, Doc. #10, are DISMISSED WITH PREJUDICE. The retaliation components of Claims Three and Four are DISMISSED WITHOUT PREJUDICE. Within twenty-one days of this Entry, Plaintiff may file a Second Amended Complaint, provided that she can set forth plausible claims of retaliation under the ADA and Rehabilitation Act, subject, of course, to the requirements of Rule 11. Claims Five through Seven are DISMISSED WITHOUT PREJUDICE, subject to refiling in a state court of competent jurisdiction. Judgment will ultimately enter in favor of Defendants and against Plaintiff on the entireties of Claims One and Two, and as to the discrimination components of Claims Three and Four.

Date: June 26, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE